# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **OLUFISAYO JEJELOWO,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.4:22-cv-01414** |
| | § | |
| **EK REAL ESTATE SERVICES OF NY,** | § | |
| **LLC, AN AFFILIATE OF EASYKNOCK,** | § | |
| **INC., EASYKNOCK, INC., AND** | § | |
| **TVC FUNDING III, LLC,** | § | |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT

Plaintiff **OLUFISAYO JEJELOWO** ("**JEJELOWO**") files this *Original Complaint* against the unauthorized, predatory lending tactics of Defendants **EK REAL ESTATE SERVICES OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **TVC FUNDING III, LLC**, and seeks redress for, among other causes, multiple violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (hereinafter, "TILA") and Federal Reserve Board of Regulation Z, 12 C.F.R. § 226 promulgated pursuant thereto, and multiple violations of Texas Finance Code, including § 305.001, *et seq.*, and in support thereof would show the Court as follows:

## PARTIES

1.     Plaintiff **OLUFISAYO JEJELOWO** is a resident of Harris County, Texas and is the person who owned the real property at issue in this suit.

2.     Defendant **EK REAL ESTATE SERVICES OF NY, LLC, an Affiliate of EASYKNOCK, INC. ("EK REAL ESTATE")** is a foreign limited liability company organized and existing under the laws of the State of Delaware but, as of September 27, 2019, is authorized to do business in the State of Texas. **EK REAL ESTATE** conducted business in this state before

that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **EK REAL ESTATE**'s principal office is located at 79 Madison Avenue, 5th Floor, New York, NY 10016, and it may be served with a copy of this *Original Complaint* by and through its registered agent for service, Corporation Services Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Travis County, Texas 78701.

3.      Defendant **EASYKNOCK, INC. ("EASYKNOCK")** is a foreign corporation organized and existing under the laws of Delaware whose principal office is 215 Park Avenue South, Suite 1713, New York, NY 10003. **EASYKNOCK** is the sole member of Defendant **EK REAL ESTATE**. **EASYKNOCK** regularly engages in business in Texas without registering with the Texas Secretary of State for the right to do business in Texas, including in connection with the transactions at issue in this lawsuit. **EASYKNOCK** may be served through the Texas Secretary of State pursuant to Fed. R. Civ. P. 4(h)(1)(A) and Tex. Civ. Prac. & Rem. Code § 17.044, via US Mail: Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, or via Overnight Delivery: Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

4.      Defendant **TVC FUNDING III, LLC ("TVC FUNDING")** is a foreign corporation organized and existing under the laws of Delaware whose principal office is 7550 Wisconsin Avenue, 10th Floor, Bethesda, Maryland 20814. **TVC FUNDING** regularly engages in business in Texas without registering with the Texas Secretary of State for the right to do business in Texas, including in connection with the transactions at issue in this lawsuit; thus, **TVC FUNDING** may be served through the Texas Secretary of State pursuant to Fed. R. Civ. P. 4(h)(1)(A) and Tex. Civ. Prac. & Rem. Code § 17.044, via US Mail: Service of Process, Secretary

of State, P.O. Box 12079, Austin, Texas 78711-2079, or via Overnight Delivery: Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

## JURISDICTION

5.      Subject matter jurisdiction is proper in this Court for the violations of the Truth in Lending Act pursuant to 15 U.S.C. §§ 1601, *et seq.*, as well as 28 U.S.C. §§ 1331 and 1337. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs. This Court has jurisdiction over the Texas state law claims under principles of supplemental, pendent, and ancillary jurisdiction.

6.      This Court has general personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **TVC FUNDING** under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant has purposefully availed itself of the benefits of conducting business in Texas, each Defendant's contacts with Texas are continuous and systematic, and each Defendant can be considered essentially at home in Texas. This Court also has specific personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **TVC FUNDING** under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant purposefully directed its wrongful activities at Plaintiff **JEJELOWO**, a resident of the forum, and Plaintiff **JEJELOWO's** suit seeks redress for harm caused by each of Defendant's wrongful actions which either took place inside of the forum and/or were purposefully directed at Plaintiff **JEJELOWO** in the forum.

## VENUE

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, each Defendant is deemed to reside in the District since each Defendant is subject to the Court's personal jurisdiction in this judicial district with respect to this civil action in question and, for venue purposes, all Defendants are deemed residents of the State in which the District is located.

## FACTS

8.      On or about July 16, 1991, Plaintiff **JEJELOWO** purchased a house and the real property located at 3410 Park Springs Lane, Kingwood, Texas 77345, more fully described as Lot 3, Block 4, Greentree Village, Section Six, an Addition in Harris County, Texas, according to the Map or Plat recorded in Volume 345, Page 1, Map Records of Harris County, Texas (the "Property").[1] *(See Exhibit "A" – Warranty Deed with Vendor's Lien to* **JEJELOWO** *attached hereto and incorporated herein for all purposes.)* **JEJELOWO** resided at the Property continuously from that date until May 2019. At the time of the transactions at issue in this dispute, the Property was designated as **JEJELOWO's** residential homestead.

9.      In early 2019, **JEJELOWO** owed money to the Internal Revenue Service ("IRS") and faced serious repercussions if she could not pay it. Due to the debt owed to the IRS, however, she could not obtain a traditional mortgage. Around the same time, **JEJELOWO's** mother was having severe health issues, and **JEJELOWO** had to assist in her caretaking. **JEJELOWO** also had limited income from her part-time jobs as a home health care provider and community college instructor. The Property was **JEJELOWO's** largest asset, and she needed a way to tap into her equity so that she can relieve the tremendous financial pressure she was in.

---

[1] **JEJELOWO** initially purchased the Property with her husband, but she was awarded the Property as her sole and separate property during the dissolution of their marriage in 1995.

10.     Desperate for a way to get the money she needed, **JEJELOWO** conducted an Internet search for loans to access home equity. Through this online search for a home equity lender, **JEJELOWO** found Defendant **EASYKNOCK**, the sole Member of **EK REAL ESTATE**, which advertised itself as an alternative lender. Upon information and belief, **EASYKNOCK** used online target ad words to increase its visibility on searches for home equity lenders. **EASYKNOCK** promoted what it called "equity release." **JEJELOWO** reached out to **EASYKNOCK** to find out more. **JEJELOWO** told **EASYKNOCK** about her financial problems with the IRS and **EASYKNOCK** told her that its "new flexible equity release program" could help with these issues.

11.     As part of a follow-up with this potential home equity lender, **EASYKNOCK** indicated to **JEJELOWO** that it would loan her money in exchange for the security of a Deed to the Property and the execution of a lease agreement.

12.     In their online advertising, during telephone calls, and through emails in Spring 2019, Defendants **EASYKNOCK** and **EK REAL ESTATE** assured **JEJELOWO** that she could "release" the home equity in her Property and either repay the "loan" and regain her homestead Property or sell the Property during her lease and "unlock" additional equity in her Property.

13.     Without any appraisal of the Property, **EASYKNOCK** and **EK REAL ESTATE** calculated the amount of rent that **JEJELOWO** would be paying based upon the amount of money that **JEJELOWO** would be taking out of the equity in her Property.

14.     This type of transaction is known as a "sale-leaseback," and it is highly disfavored in Texas, particularly when the transaction involves a Texas citizen's homestead. **EASYKNOCK** represented that the lease agreement would include an option to pay off **EASYKNOCK**'s loan, which would be secured by a portion of **JEJELOWO's** equity in her Property. **EASYKNOCK**

also promised **JEJELOWO** that she would retain the remaining equity in her Property—the equity difference between the Property's total market value or appraised value of her Property and the amount of **EASYKNOCK's** secured funding.

15.     All communications concerning the transaction were between **JEJELOWO** and **EASYKNOCK**'s employees or representatives. All material sent to **JEJELOWO** was sent by **EASYKNOCK**, the sole Member of Defendant **EK REAL ESTATE**.

16.     In their online advertising and during several calls and email communications in May and June 2019 with members of **EASYKNOCK's** so-called "Flexity Experts," Defendants **EASYKNOCK** and **EK REAL ESTATE** assured **JEJELOWO** that she could "release" the home equity in her Property and either repay the "loan" and gain back the secured portion of the equity in her homestead Property or sell the Property during her lease and "unlock" her additional retained equity in her Property. **JEJELOWO** understood from these communications that **EASYKNOCK's** program would operate as a loan secured by equivalent equity in her Property. **EASYKNOCK** proposed that she cash out only a portion of her equity in the Property (about 59% of her Property's value), not the full value of the home. **EASYKNOCK** told her that at any time she could pay off the amount **EASYKNOCK** funded in exchange for a release of **EASYKNOCK's** secured interest in that portion of the equity of her Property. In the interim, **JEJELOWO** was told she would continue to live in her home and make monthly payments to **EASYKNOCK** just like she would for any traditional home equity loan. At all times, **JEJELOWO** only intended to receive a home equity loan, not to make a complete sale of her rights and interest in her homestead.

17.     **EASYKNOCK's** solicitations referred to its program as a "new flexible equity release program." Further, **EASYKNOCK's** solicitations and program materials from

**EASYKNOCK's** so-called "Flexity Experts" described that **JEJELOWO** would need to complete credit and criminal background checks and provide certain income documents as part of **EASYKNOCK's** "credit authorization." Clearly, Defendants **EK REAL ESTATE** and **EASYKNOCK** recognized that the transaction made the basis of this suit was a "loan" requiring credit and income authorization and that they were acting as "lenders."

18.    Neither of Defendants **EASYKNOCK** or **EK REAL ESTATE** are qualified lenders in Texas with the Texas Office of Consumer Credit Commission (OCCC).

19.    Despite not being qualified lenders in Texas at the time of the "sale-leaseback" transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE's** representations regarding the transaction amounted to a home equity loan, and **JEJELOWO** understood the transaction to be a home equity loan.

20.    At the time of these transactions, none of the Defendants were even registered to conduct any type of business in Texas—despite regularly doing so.

21.    To induce **JEJELOWO** to close on their "sale-leaseback" loan transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** told **JEJELOWO** that they could give her the money quickly and when she was ready to get a home loan then she could pay off or purchase back **EASYKNOCK's** secured equity interest in the Property at any time. The representative of **EASYKNOCK** kept reiterating that **JEJELOWO** still had plenty of equity in the Property.

22.    **EASYKNOCK** and **EK REAL ESTATE** further represented that **JEJELOWO** would maintain a 41% share of the equity in her Property and that she would be entitled to additional cash from her remaining equity in the Property.

23.    **JEJELOWO** ultimately agreed to go forward with **EASYKNOCK** and **EK REAL ESTATE's** "sale-leaseback" loan transaction. Based on their representations about what

amounted to a home equity loan, on or about May 21, 2019, **JEJELOWO** deeded the Property to Defendant **EK REAL ESTATE**. *(See Exhibit "B" – General Warranty Deed which is attached hereto and incorporated herein for all purposes.)*

24.    As a further part of these transactions, **JEJELOWO** entered into a *Lease with Tenant Option Agreement* with Defendant, **EK REAL ESTATE**. *(See Exhibit "C" – Lease with Tenant Option Agreement which is attached hereto and incorporated herein for all purposes.)* The Lease was for an initial period of twelve (12) months at a rental rate of $28,800 per year ($2,400.00 per month) with the first payment being a prorated amount for May 21, 2019 through June 30, 2019, due and payable at closing on May 21, 2019.[2] Further, at closing **EASYKNOCK** and **EK REAL ESTATE** held back the sum of $4,800.00 for advanced rent over the next twelve months from which $400.00 would be applied as a credit each month towards the monthly rent payment.

25.    The Lease was renewable for consecutive one-year terms, and, if certain conditions were met, **JEJELOWO** could pay off the loan by "repurchasing" **EASYKNOCK's** secured interest in the Property. To do so, however, **JEJELOWO** would have to tender a payment of $203,526.00, which amount escalated on an annual basis (by at least 2.5%), plus all closing costs (including, but not limited to, broker's commissions, transfer taxes, attorneys' fees, and filing fees) paid by Defendant **EK REAL ESTATE**. In the interim, **JEJELOWO** was responsible for paying all Rent and Additional Rent[3] due Defendant **EK REAL ESTATE** under the Lease.

26.    For the "right" to enter into a Lease for her Property—potentially, in perpetuity— **EK REAL ESTATE** charged **JEJELOWO** $131,166.00, an amount which was deducted from the $325,000.00 alleged "Contract Sales Price." The $28,800.00 per year base rent for year one of

---

[2] The HUD statement (Exhibit "D") shows that **JEJELOWO** paid the initial rent payment for the period from May 21, 2019, through June 30, 2019 from the "loan" proceeds to **EK REAL ESTATE**.
[3] Additional Rent included any repairs made to the Property by **EK REAL ESTATE** or **EASYKNOCK** including repairs necessary for the habitability of the Property.

the Lease escalated in every consecutive one-year term of the Lease. Pursuant to the terms of the Lease, **JEJELOWO** remained solely responsible for all repairs and maintenance on the Property. If Defendant **EK REAL ESTATE** paid for any repairs or maintenance, **JEJELOWO** as Tenant would reimburse those sums as "Additional Rent" to Defendant **EK REAL ESTATE**.

27.    Upon information and belief, the monthly rent charged by Defendants **EASYKNOCK** and **EK REAL ESTATE** to **JEJELOWO** exceeded the rental rates in Kingwood, Texas for similar properties. Indeed, Defendants **EASYKNOCK** and **EK REAL ESTATE** use a set formula (and not market rates) to charge victims of their wrongful "sale-leaseback" loan scheme, like Plaintiff **JEJELOWO**, monthly rent equal to approximately 0.75% of the equity amount **EASYKNOCK** and **EK REAL ESTATE** funded at closing (9% interest per year) *plus* prorated taxes and insurance for the Property. Thus, the monthly "rent" to **EASYKNOCK** was not designed based on market rates for leasing properties like **JEJELOWO's**. Rather, the "rent" was a monthly payment of every amount that this transaction would cost **EASYKNOCK** on a monthly basis, including monthly insurance and monthly property taxes. And **EASYKNOCK** and **EK REAL ESTATE** took security on the front end of this transaction in the form of **JEJELOWO's** entire equity value in her home, rather than just the value of the equity needed to secure the amount funded. **EASYKNOCK** and **EK REAL ESTATE** did this surreptitiously to ensure that their transaction costs would always be covered by **JEJELOWO's** alleged retained equity in the Property, not just the equity covered by its home equity loan funding. All invoices for the rent, past due rent, and other charges came from Defendant **EASYKNOCK.**

28.    Defendants never asked for, nor did they ever receive, a waiver of homestead from **JEJELOWO** in the "sale-leaseback" loan transaction.

29.     Upon information and belief, **EK REAL ESTATE** and **EASYKNOCK** obtained an appraisal to support a $325,000.00 value and "Contract Sales Price" ascribed to **JEJELOWO's** Property.

30.     The Property was burdened by only two debt obligations that would need to be satisfied at closing out of the proceeds from the $325,000.00 "Contract Sales Price:" (1) an IRS lien in the amount of $116,640.25; and (2) a FNA DZ, LLC lien in the amount of $23,526.92.

31.     Despite having more than $184,832.83 in equity in her Property, at the closing **JEJELOWO** received "net sales proceeds" of only $28,879.32 out of the listed $325,000.00 "Contract Sales Price." In addition to outrageous closing costs burdened upon **JEJELOWO** by Defendants, on the Settlement Statement, Defendants **EK REAL ESTATE** and **EASYKNOCK** deducted a charge of $131,166.00 as a "Tenant Purchase Agreement" from **JEJELOWO's** remaining equity in the Property. *(See Exhibit "D" – HUD – Settlement Statement which is attached hereto and incorporated herein for all purposes.)*

32.     In essence, Defendants stole **JEJELOWO's** property worth at least $325,000.00 for a total of only about $171,693.25 in value to **JEJELOWO** at closing (payment of $28,879.32 to **JEJELOWO** and the payment of $142,813.93 in obligations tied to the Property).

33.     At the same time, pursuant to the "sale-leaseback" scheme, Defendants **EK REAL ESTATE** and **EASYKNOCK** strapped **JEJELOWO** to rental payments of $28,800.00 for the first twelve months of a lease, a rental amount which escalated over each consecutive one-year period before **JEJELOWO** had the opportunity to "purchase' back the Property for the sum of $203,526.00 (which also escalated on an annual basis), *plus* all amounts paid by **EK REAL ESTATE** at closing. **JEJELOWO** was also responsible for Defendant **EK REAL ESTATE's** inflated closing costs and any other Rents or Additional Rents that were due.

34.     No disclosures were provided to **JEJELOWO** by either Defendants **EASYKNOCK** or **EK REAL ESTATE** pursuant to the Truth in Lending Act or the Texas Finance Code, which require the following disclosures, among others, be given to **JEJELOWO** before she entered into this transaction:

      a.    Full disclosure of loan costs and terms;

      b.    The right of rescission;

      c.    Disclosing to the borrower when mortgage was reassigned;

      d.    Disclosure of the caps on high mortgage costs; and

      e.    Assessing whether the borrower had the ability to repay the loan prior to entering into the transaction with the borrower.

35.     Indeed, neither **EASYKNOCK** nor **EK REAL ESTATE** conducted any substantive assessment of **JEJELOWO's** financial ability to repay the "loan" or to pay the monthly rent, Additional Rent, or other amounts due under the Lease. **JEJELOWO** told **EASYKNOCK** about her financial problems prior to the transaction and about her limited income. Additionally, **JEJELOWO** provided **EASYKNOCK** her income documents, which would have demonstrated her limited income. Defendants **EK REAL ESTATE** and **EASYKNOCK** knew or should have known that **JEJELOWO's** income was not enough to cover rent payments (and any Additional Rent payments) prior to entering into the "sale-leaseback" loan transaction. Thus, Defendants knew **JEJELOWO** would be unable to pay the monthly and other Lease payments, let alone qualify for another loan to regain title to her residential homestead Property.

36.     All past due rental notices were being sent to **JEJELOWO** by Defendant **EASYKNOCK**. Although **JEJELOWO** paid what she could to Defendants **EASYKNOCK** and **EK REAL ESTATE,** she could not afford the entirety of the rent payments due and continued to

get further behind on the Lease. By April 2022, **JEJELOWO** would fall behind for good on the rental payments due Defendants **EASYKNOCK** and **EK REAL ESTATE**.

<u>**VIOLATIONS OF TEXAS PROPERTY CODE § 41.006**</u>

37.     Plaintiff **JEJELOWO** adopts all preceding paragraphs as if recited verbatim herein.

38.     Plaintiff **JEJELOWO** was the fee simple owner of the Property which was her homestead prior to the sale-leaseback transaction made the subject of this suit.  Section 41.006 of the Texas Property Code, states as follows:

(a)     Except as provided by Subsection (c), any sale or purported sale in whole or in part of a homestead at a fixed purchase price that is less than the appraised fair market value of the property at the time of the sale or purported sale, and in connection with which the buyer of the property executes a lease of the property to the seller at lease payments which exceed the fair market rental value of the property, is considered to be a loan with all payments made from the seller to the buyer in excess of the sales price considered to be interest subject to Title 4, Finance Code.

(b)     The taking of any deed in connection with a transaction described by this section is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and the deed is void and no lien attaches to the homestead property as a result of the purported sale . . . .

39.     Although Defendant **EK REAL ESTATE** claimed that it was purchasing **JEJELOWO's** property for $325,000.00, **JEJELOWO** only received the sum of $171,693.25 from those "sales" proceeds and executed a *Lease with Tenant Option* leasing back the Property at a rental rate that exceeded similar properties in Kingwood, Texas, especially given the condition the Property was in at the time of the "pretend sale" and leaseback. Thus, **EK REAL ESTATE** "purchased" **JEJELOWO's** property for far less than the appraised market value at the time of the purported sale, and all payments made (and charges debited) from **JEJELOWO** to **EK REAL ESTATE** and **EASYKNOCK** in connection with the leaseback far exceed the fair market rental value of the Property.

40.    For these reasons, the "sale-leaseback" transaction is deemed a loan under the Texas Property Code. All payments made from **JEJELOWO** to **EK REAL ESTATE** and **EASYKNOCK** in excess of the sales price are considered interest subject to the Texas Finance Code. Further, the deed conveyed as part of the transaction is **VOID** and no lien ever legally attached to **JEJELOWO's** homesteaded Property. Because the transaction involved the taking of a deed, the transaction is a deceptive trade practice under chapter 17 of the Texas Business and Commerce Code.

## SUIT TO QUIET TITLE TO THE PROPERTY

41.    Plaintiff **JEJELOWO** adopts all preceding paragraphs as if recited verbatim herein.

42.    Plaintiff **JEJELOWO** was the fee simple owner of the Property which was her homestead prior to the sale-leaseback transaction made the subject of this suit.

43.    Although Defendant **EK REAL ESTATE** claimed that it was purchasing **JEJELOWO's** property for $325,000.00, **JEJELOWO** only received the sum of $171,693.25 from those "sales" proceeds and executed a *Lease with Tenant Option* leasing back the Property at a rental rate that exceeded similar properties in Kingwood, Texas, especially given the condition the Property was in at the time of the "pretend sale" and leaseback. Thus, **EK REAL ESTATE** "purchased" **JEJELOWO's** property for far less than the appraised market value at the time of the purported sale, and all payments made (and charges debited) from **JEJELOWO** to **EK REAL ESTATE** and **EASYKNOCK** in connection with the leaseback far exceed the fair market rental value of the Property.

44.    For these reasons, the "sale-leaseback" transaction is deemed a loan under the Texas Property Code. All payments made from **JEJELOWO** to **EK REAL ESTATE** and **EASYKNOCK** in excess of the sales price are considered interest subject to the Texas Finance

13

Code. Further, the deed conveyed as part of the transaction is **VOID** and no lien ever legally attached to **JEJELOWO's** homesteaded Property.

45.    Approximately a year after the transaction, Defendant **EK REAL ESTATE** borrowed from Defendant **TVC FUNDING** the sum of $208,000.00 and **TVC FUNDING** filed a Deed of Trust against Plaintiff **JEJELOWO's** Property. As a result, Plaintiff **JEJELOWO** seeks to quiet title to the Property voiding the *General Warranty Deed* given to Defendant **EK REAL ESTATE** and the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **TVC FUNDING**. Given that this is an impermissible transaction under § 41.006 of the Texas Property Code, **JEJELOWO** asks the Court to determine that Defendants **EK REAL ESTATE** and **TVC FUNDING** have no legal, equitable, or other interest in her Property and that Plaintiff **JEJELOWO** is the sole and rightful owner of the Property.

## DECLARATORY JUDGMENT

46.    Plaintiff **JEJELOWO** adopts all preceding paragraphs as if recited verbatim herein.

47.    28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." This remedy is available to Plaintiff **JEJELOWO** "whether or not further relief is or could be sought."

48.    Plaintiff **JEJELOWO** is entitled to the additional remedy of declaratory relief under the Federal Declaratory Judgment Act and seeks the following declarations:

     a.    That Defendants **EK REAL ESTATE, EASYKNOCK**, and **TVC FUNDING** have no rights, title or ownership interest in the Property;

     b.    That the General Warranty Deed executed by **JEJELOWO** on May 21, 2019 is void as a matter of law;

    c.      That the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **TVC FUNDING** is void;

    d.      That **JEJELOWO** is the sole and rightful owner of the Property;

    e.      The Property at issue in this dispute was **JEJELOWO's** residential homestead;

    f.      Because the Property was **JEJELOWO's** residential homestead, any transaction associated with the Property required compliance with the Texas Property Code, including the restrictions of Tex. Prop. Code § 41.006(a) and (b) and Texas common law on equitable mortgages;

    g.      Defendants' deed in connection with the underlying sale-leaseback transaction is void and no lien legally attached to **JEJELOWO's** residential homestead property (the Property) as a result of the purported sale;

    h.      The option to repurchase the property or have it sold to a third-party is an executory contract and, accordingly, should have been filed in the real property records by **EASYKNOCK**;

    i.      Alternatively, Defendants' deed in connection with the underlying sale-leaseback transaction is void as being in violation of Article 16, Section 50 of the Texas Constitution as an unpermitted encumbrance on a homestead;

    j.      The Tenant Purchase Agreement, Rent, and Additional Rent are considered interest under the Texas Finance Code; and

    k.      The sale-leaseback transaction made the subject of this suit is an equitable mortgage under Texas law.

## VIOLATIONS OF THE TRUTH IN LENDING ACT

49.    Plaintiff **JEJELOWO** adopts all preceding paragraphs as if recited verbatim herein.

50.    Plaintiff **JEJELOWO** is a natural person.

51.    At all times relevant hereto, Defendants **EASYKNOCK** and **EK REAL ESTATE** regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the

person to whom the transaction which is the subject of this action is initially payable, making Defendants creditors within the meaning of the TILA, 15 U.S.C. § 1602(g) and Regulation Z § 226.2(a)(17). Under Texas law, a sale-leaseback transaction, like the one at issue in this case, is an "equitable mortgage" and TILA would apply. *See Johnson v. Cherry*, 726 S.W.2d 4 (Tex. 1987).

52.     The transaction in question is a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z § 226.2. The security for the transaction is the primary dwelling of **JEJELOWO**.

53.     Defendants **EASYKNOCK** and **EK REAL ESTATE** did not provide to Plaintiff **JEJELOWO** a Truth in Lending Disclosure statement and as a result violated the requirements of the Truth in Lending Act in the following ways, among others:

      a.    By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. §§ 1638(b) and 1639, and Regulation Z § 226.17(b);

      b.    By failing to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §§ 1632(a) and 1639, and Regulation Z § 226.17(a);

      c.    By failing to include in the finance charges certain charges imposed by Defendants payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.18(d);

      d.    By failing to calculate and disclose finance charges on the amount financed per 15 U.S.C. § 1606 and Regulation Z § 226.22;

      e.    By failing to disclose that **JEJELOWO** had a right of rescission;

      f.    By failing to disclose to **JEJELOWO**: "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan," as per 15 U.S.C. § 1639; and

      g.    By failing to meet the minimum standards for residential mortgage loans per 15 U.S.C. § 1639c, including the ability to repay standards and the prohibition on arbitration agreements in connection with **JEJELOWO's** principal dwelling.

54.     By reason of the aforesaid violations of the TILA and Regulation Z, Defendants are liable to Plaintiff **JEJELOWO** in the amount of twice the finance charge, actual damages to be established at trial, attorneys' fees and costs, and any other amounts provided for under 15 U.S.C. § 1640.

## USURY UNDER THE TEXAS FINANCE CODE

55.     Plaintiff **JEJELOWO** adopts all preceding paragraphs as if recited verbatim herein.

56.     On or about May 21, 2019, Defendants **EK REAL ESTATE** and **EASYKNOCK** loaned money to Plaintiff **JEJELOWO** against her homestead Property, disguised as a "sale-leaseback" transaction. The loan/equitable mortgage between **JEJELOWO** and Defendants **EASYKNOCK** and **EK REAL ESTATE** only provided **JEJELOWO** with $28,879.32 in cash and another $143,068.18 to pay off liens, real property taxes, and HOA assessments on the Property. Defendants **EK REAL ESTATE** and **EASYKNOCK** had the Property appraised to look like a $325,000.00 sale to them from **JEJELOWO**. From a purported sale of the Property for the sum of $325,000.00, Plaintiff received a total value of $171,947.50. Disguised as a Tenant Purchase Agreement on the HUD form, Defendants **EK REAL ESTATE** and **EASYKNOCK** took a $131,166.00 fee and other fees from the sales price.

57.     Plaintiff **JEJELOWO** had an obligation to repay the principal amount of Defendants' loan as seen in the option to terminate because no matter how the Lease Agreement was terminated (by **JEJELOWO** exercising her option to repurchase the Property, the sale of the Property to a third party buyer, or by default under the Lease), the option to terminate was always triggered and the Termination Option Price due **EK REAL ETATE** and **EASYKNOCK** was paid.

58.     Defendants **EK REAL ESTATE** and **EASYKNOCK** contracted for and received interest that exceeded the maximum amount allowed by law by charging excessive fees including, without limitation, the following:

      a.     Tenant Purchase Agreement - $131,166.00;

      b.     Processing Fees of $6,500.00;

      c.     Closing Costs of $7,875.00;

      d.     Lease Payments of $28,800.00 in the first year;

      e.     Lease Payments of at least $29,520.00 in the second year;

      f.     Lease Payments of at least $30,258.00 in the third year;

      g.     The difference between the amount received by Plaintiff for (or were satisfied by) the loan of $171,693.25 and the repayment option of $203,526.00, if repurchased within the first twelve months, at least $208,614.15 if repurchased within twenty-four months and at least $213,829.50 if repurchased within thirty-six months plus closing costs and rents; and

      h.     Excessive closing costs.

59.     Defendants' unlawful conduct caused injury to Plaintiff **JEJELOWO** which resulted in the following damages:

      a.     Statutory Penalties; and

      b.     Attorneys' fees.

60.     Plaintiff **JEJELOWO** seeks unliquidated damages within the jurisdictional limits of this Court.

61.     Plaintiff **JEJELOWO** is entitled to recover statutory penalties under Texas Finance Code § 305.001(a), that being the greater of the following:

      a.     Three times the amount by which the interest contracted for, charged, or received exceeds the maximum amount of interest allowed by the usury statute; or

      b.     $2,000.00 or 20% of the principal, whichever is less.

62.     In addition, since the interest charged and received under this contract exceeded twice the amount allowed by law, Plaintiff **JEJELOWO** is seeking the forfeiture of all principal, interest, and other amounts charged and received pursuant to Tex. Fin. Code § 305.002.

63.     Plaintiff **JEJELOWO** is further entitled to recover reasonable attorneys' fees under Texas Finance Code § 305.005 against Defendants **EK REAL ESTATE** and **EASYKNOCK**. Plaintiff has hired the undersigned attorneys to represent her interests in this matter and has agreed to pay the attorneys a reasonable rate for their services. Plaintiff **JEJELOWO** seeks to recover her reasonable and necessary attorneys' fees from Defendants, jointly and severally, in this matter in an amount as determined under the Court's procedures.

## COMMON LAW AND STATUTORY FRAUD

64.     Plaintiff **JEJELOWO** adopts all preceding paragraphs as if recited verbatim herein.

65.     Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to Plaintiffs for common law fraud, fraud by nondisclosure, fraudulent inducement, and statutory fraud pursuant to Tex. Bus. & Com. Code § 27.01. Because the violation relates to the transfer of title to real estate, the violation is also a false, misleading, or deceptive act or practice under chapter 17 of the Texas Business and Commerce Code.

66.     Specifically, as described throughout this Complaint:

a.     The sale-leaseback loan transaction is a transaction that involves real property in Texas, namely **JEJELOWO's** homestead Property.

b.     Defendants **EASYKNOCK** and **EK REAL ESTATE** made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so. Among other things, as described more specifically above, **EASYKNOCK** and **EK REAL ESTATE** falsely and misleadingly represented that they were authorized under Texas law to enter into the loan transaction that is the basis of this suit; the sale-leaseback loan transaction was a home

equity loan; **JEJELOWO** would maintain her 41% interest in the equity of her Property after the sale-leaseback loan transaction.

c.      Defendants made additional false, deceptive, and material representations in their marketing materials. As described above, Defendants' marketing materials described their sale-leaseback transaction to **JEJELOWO** as a "new flexible equity release program" and as an opportunity to "release" the equity in her home.

d.      As described above, Defendants falsely represented to **JEJELOWO** that she would maintain a 41% share of the equity in her Property.

e.      The sale-leaseback transaction was an equitable mortgage under Texas law and as such violated Article 16, Section 50 of the Texas Constitution and as a result was a void transaction against **JEJELOWO's** homestead Property.

f.      Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiff to enter into the sale-leaseback transaction for her Property.

g.      Defendants knew Plaintiff was unaware of the concealed/undisclosed facts and did not have an equal opportunity to discover these facts. Defendants were deliberately silent when they had a duty to speak about the concealed/undisclosed facts.

h.      The representations and omissions were material and false.

i.      Defendants made these representations or omitted material facts with the intent that Plaintiff rely on the representations or omissions.

j.      Plaintiff relied on these representations and Defendants' nondisclosure.

k.      In relying on these representations and without the knowledge of the undisclosed facts, Plaintiff **JEJELOWO** was injured.

67.    For the common law fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from Defendants **EASYKNOCK** and **EK REAL ESTATE**, her actual damages, exemplary damages, costs of court, and pre- and post-judgment interest.

68.    For her statutory fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from the Defendants **EASYKNOCK** and **EK REAL ESTATE**, her actual damages,

and, pursuant to Tex. Bus. & Com. Code § 27.01(d) and (e), exemplary damages, attorneys' fees, expert witness fees, deposition-copy costs, costs of court, and pre- and post-judgment interest.

## JURY DEMAND

69.    Plaintiff **JEJELOWO** demands trial by jury of all issues triable of right by a jury. Fed. R. Civ. P. 38.

## PRAYER

Plaintiff **OLUFISAYO JEJELOWO** prays that the Court enter Judgment in favor of **OLUFISAYO JEJELOWO** jointly and severally against Defendants **EK REAL ESTATE SERVICES OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **TVC FUNDING, INC.,** for the damages as set forth herein and for such other and further relief, in law or at equity, to which she may be justly entitled.

Dated: May 3, 2022.

Respectfully submitted:

By: _ /s/ Robin M. Ziek_____
     Robin M. Ziek, Attorney at Law
     Attorney-In-Charge
     State Bar No.: 22262575
     Federal I.D. No. 8231
     24 Greenway Plaza, Suite 2050
     Houston, Texas 77046
     Telephone: (713) 222-8030
     Facsimile: (832) 565-9011
     rziek@sbcglobal.net

     **ATTORNEYS FOR PLAINTIFF
     OLUFISAYO JEJELOWO**

21

**OF COUNSEL:**

POGACH PLLC

Adam D. Pogach
State Bar. No.: 24048734
Federal I.D. No.: 634567
24 Greenway Plaza, Suite 2050
Houston, Texas 77046
Telephone: (713) 524-5400
Facsimile: (713) 524-5401
adam@lawdifferent.com

FELDMAN & FELDMAN, P.C.

Cris Feldman
State Bar. No.: 24012613
Federal I.D. No.: 712459
Derek D. Bauman
State Bar. No.: 24044475
Federal I.D. No.: 814346
Kimberly Dang
State Bar. No.: 24116246
Federal I.D. No.: 3502767
3355 W. Alabama St, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472
cris.feldman@feldman.law
derek.bauman@feldman.law
kimberly.dang@feldman.law